## MEYER BROS. & CO. v. J. M. SLIGH ET AL.

### No. 6868.

1. **Sale of Perishable Property in Custody of the Law.** — Property in custodia legis when sold as perishable property by order of the court under the statute becomes the absolute property of the purchaser at the sale. This rule obtains as to property seized belonging to others than the defendant in the attachment under which the seizure is made.

2. **Same — Remedy of Owner.** — The purchaser under such sale under order of court is not bound to account to the owner of such property, though not a party to the proceedings under which the sale is made. The owners having lost their title to the property their remedy was either to sue the sheriff or to follow the proceeds into the registry of the court. The owners could intervene in the suit and have the proceeds of the sale of such property paid over to them, on inquiry and ascertainment of their right and the amount. This could be done after the proceeds had been paid over to the plaintiff in the proceedings.

3. **Same — Amount of Recovery for Such Property.** — In any event no more could be recovered by such intervention than the property sold for, if less than the value.

APPEAL from Dallas. Tried below before Hon. Geo. N. Aldredge. The opinion states the case.

*Evans & Gooch*, for appellants.—1. A sheriff's sale conveys no title if the goods in fact are not the property of the debtor. Benj. on Sales, 3 Am. ed., secs. 17, 414, 621.

2. A judgment becomes final only on adjournment of the term, and may be amended at any time during the term. Grubbs v. Blum, 62 Texas, 426; Hooker v. Williamson, 60 Texas, 524; Garza v. Baker, 58 Texas, 483; Blum v. Wettermark, 58 Texas, 125; Freem. on Judg., 69.

3. Even if the sale of the property by order of the court passed a good title to the specific property, the owners thereof could come into the court by motion at any time while the proceeds of the sale are in the custody of the court and have the money representing their property paid over to them. Townsend v. Smith, 20 Texas, 465; Young v.

Keller, 7 S.W. Rep. (Mo.), 293; McLaughlin's Admr. v. Daniel, 8 Dana, 183; Howard v. North, 5 Texas, 290.

4.   If the sheriff's sale was valid and passed the title to property that did not belong to the attachment defendants, the purchaser at such sale, after having settled with and reimbursed the owners of the property, will be subrogated to the owners' rights to follow the proceeds into court and demand its payment to them instead of the judgment creditor. Howard v. North, 5 Texas, 290; Teas v. McDonald, 13 Texas, 349; Yaple v. Stephens, 14 Pac. Rep., 222; McNiel v. Miller, 2 S. E. Rep., 335.

*Wright & Wright*, for appellees.—This is a strange and novel proceeding, and is not authorized by any rule of law or practice known to our jurisprudence.    Freem. on Judg., 3 ed., sec. 478, and authorities there cited.

If appellants had any right in the matter the plea or motion was too late and should have been by a suit.    But admitting for the sake of argument that they were properly before the court, then we submit that the sale of perishable property seized under an attachment by order of a competent court, and according to the statute providing for the sale of such goods, vests an absolute and indefeasible title in the purchaser, which can not be defeated by an action for their recovery brought by the real owner.   Young v. Keller, 7 S. W. Rep. (Mo.), 293, and authorities cited.

GARRETT, PRESIDING JUDGE, *Section B.*—This case was a motion filed in the case of J. M. Sligh v. Patterson & Co., No. 6570, in the District Court of Dallas County May 3, 1888, and making S. B. Hopkins a party thereto, setting forth that on January 11, 1888, J. M. Sligh brought this suit against Patterson & Co. and sued out an attachment, which was on the same day levied on the stock of drugs, medicines, etc., belonging to said Patterson & Co., situated in their store house on Main Street, in Dallas; and that on the same day S. B. Hopkins also brought a suit against said Patterson & Co. and caused an attachment to be levied on the same property; that afterward, on January 26, 1888, on the application of Sligh and Hopkins the goods were sold as perishable property in accordance with the statute, and the proceeds of the sale made February 3, 1888, were paid into the registry of the court; that appellants became the purchasers of said goods for the sum of $6025, which they paid to the sheriff, and he paid to the clerk, as he was directed to do by said order of sale.

On March 16, 1888, the appellees Sligh and Hopkins respectively obtained judgment in said court against said Patterson & Co. by default for their debts for the full amount claimed by them, the judgment in cause No. 6570 of Sligh v. Patterson & Co. reciting "that the attachment lien of S. B. Hopkins in said cause No. 6569 on said stock

of drugs, goods, etc., is superior to the lien of said J. M. Sligh in this cause;" that on the 17th of March, 1888, the clerk of the court paid to S. B. Hopkins out of the proceeds of the sale of said property the sum of $3557.46 in full satisfaction of his said judgment; that he paid the balance of said proceeds, viz., $2481.44, to said Sligh in partial satisfaction of his judgment; that among the articles attached and sold as aforesaid were one No. 2 Sterling generator and four ten-gallon seamless copper fountains of the value of $310, two gold-set diamond rings of the value of $120, and five-sixths of a dozen of anti-malarine (a patent medicine) of the value of $6.25, that did not belong to and were not the property of said Patterson & Co., and were not liable to seizure and sale under said writs of attachment; that said generator and fountains were the property of James W. Tufts, the manufacturer, and he had retained a lien thereon to secure the payment of the sum of $195, the balance of the purchase money due from said Patterson & Co. thereon, duly recorded, etc., and of which appellants had no knowledge whatever at the time of the purchase of said goods; that the diamond rings were the property of Giles Bro. & Co., and not of Patterson & Co.; and that the patent medicine was the property of the Specific Manufacturing Company and not Patterson & Co.; that appellants were compelled and obliged to settle the lien on said generator and fountains, and paid in satisfaction thereof $108 to said Tufts; that he was compelled to pay Giles Bro. & Co. $96 for said diamond-set rings, and to deliver to the Specific Manufacturing Company the said patent medicine; that appellants bought the said property at said sheriff's sale and paid therefor, and did not know that the same was not the property of said Patterson & Co., and with no actual notice whatever of any claim thereto by any other person. Appellants allege that they paid $6025 for the entire stock of goods, but do not show what the property which gave rise to the controversy sold for.

Said motion was filed at the same term of the court at which the judgments were rendered in the cases of Sligh v. Patterson & Co. and Hopkins v. Patterson & Co., and sought to have paid to appellants out of the proceeds of sale of said goods the sums of money set out, amounting to the sum of $210.25.

Appellees filed a demurrer to the motion, which was sustained, and appellants having declined to amend judgment was rendered against them and they gave notice of appeal, and the action of the court below is now here for revision.

Property in custodia legis when sold as perishable property by order of the court under the statute, becomes the absolute property of the purchaser at the sale. Young v. Keller, 7 S. W. Rep. (Mo.), 293. The appellants Meyer Bros. & Co. were not obliged to account to the true owners of the property purchased by them at the sale made thereof by

the sheriff under an order of the judge; and having lost their title to the property the remedy of the owners was either to sue the sheriff or to follow the proceeds into the registry of the court. Having the right to pursue the proceeds of their property into the registry of the court, the owners could by a motion intervene in the suit in the proceedings of which it was sold and have such proceeds paid over to them on inquiry and ascertainment of the right and the amount. That the proceeds had been already paid over by the clerk to the attaching creditors could make no difference. The court has control over its judgment until adjournment, and if it should appear that the money had been wrongly paid over to the plaintiffs in the suit, it would be proper for the court to direct the plaintiff to whom it had been so paid to refund it and to award judgment against him therefor.

But the appellants having obtained absolute title to the property at the sale were volunteers in their payment therefor to the owners, and it is doubtful whether they were entitled to be subrogated to the right of the owners to sue for the proceeds. In any case they could only recover the amount which the property sold for if it was less than the amount paid by them, and there is nothing in the motion showing what the property sold for, and demurrer was properly sustained.

We report the case for affirmance.

*Affirmed.*

Adopted June 9, 1891.